IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| LISA A. GHEZZI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | 12 C 6604 |
| | ) | |
| FORD MOTOR COMPANY, INC. and | ) | Judge Virginia M. Kendall |
| KIMBERLY WYATT, | ) | |
| | ) | |
| Defendants. | | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Lisa A. Ghezzi filed a complaint in the Circuit Court of Cook County against Defendants Ford Motor Company and Kimberly Wyatt for tortious interference with prospective economic advantage. Ghezzi seeks more than one-hundred-thousand dollars in damages in this diversity action. Ghezzi worked as an on-site liaison between Ford and several of its suppliers at Ford's Chicago Assembly Plant (the "Plant"). Ghezzi alleges that the suppliers terminated their business relationship with her after the Defendants made false statements and threats to the suppliers. After removing this action to this Court, the Defendants denied Ghezzi's allegations. The Defendants now seek summary judgment because (1) the Defendants were not strangers or outsiders to the business relationship between Ghezzi and the suppliers, (2) Ghezzi cannot show that the Defendants intentionally and unjustifiably interfered with Ghezzi's relationship with the suppliers, and (3) the Defendants did not cause the suppliers to terminate their relationship with Ghezzi. For the reasons stated herein, this Court grants the Defendants' motion in part and denies it in part.

## FACTS

The following material facts are undisputed unless otherwise noted. Ghezzi is an Indiana resident who worked as a customer liaison on behalf of several companies that supplied parts to Defendant Ford at the Plant. (Dkt. No. 49, Pl.'s Resp. to Defs.'s 56.1 Stmt. at ¶ 4.) Specifically, Ghezzi served as a customer liaison at the Plant for Dakkota Integrated Systems, Inc., Inalfa Roof Systems, Inc., Undercar/ABC Group, Inc., and NYX Incorporated (collectively, the "Suppliers"). (*Id.* at ¶¶ 17, 25, 33, 35.) As a customer liaison, Ghezzi provided on-site customer service and support for the Suppliers. (*Id.* at ¶ 5.) The Suppliers paid Ghezzi by the hour and could terminate Ghezzi, an independent contractor, at any time. (*Id.* at ¶ 9.)

Ford is a Delaware corporation with a principal place of business in Michigan. (*Id.* at ¶ 1.) Ford purchased automotive parts from the Suppliers for use in vehicles manufactured at the Plant. (*Id.* at ¶¶ 4, 10.) The Plant is a secure facility controlled by Ford. (*Id.* at ¶¶ 14-15.) One must have either an access badge or a temporary pass to gain access to the Plant. (*Id.* at ¶ 15.) Consequently, one could not serve as a customer liaison at the Plant unless Ford granted him or her access. (*Id.* at ¶ 16.) The Suppliers provided customer liaisons to Ford at the Plant because Ford purchased automotive parts from the Suppliers. (*Id.* at ¶¶11-13.)

Wyatt is an Illinois resident who worked for Ford as a Senior Incoming Quality Manager. (*Id.* at ¶ 2.) As a Senior Incoming Quality Manager, Wyatt was responsible for issues and concerns related to the quality of automotive parts used at the Plant to make Ford vehicles. (*Id.* at ¶ 3.) Other than simple pleasantries, Wyatt had no work-related interaction with Ghezzi. (Dkt. No. 54, Defs.'s Resp. to Pl.'s 56.1 Stmt. at ¶ 8.)

Dakkota terminated its business relationship with Ghezzi at the Plant in February 2010 due to internal restructuring. (Pl.'s Resp. to Defs.'s 56.1 Stmt. at ¶¶ 19-20.) Dakkota reduced its

2

number of customer liaisons at the Plant from two to one. (*Id.* at ¶ 21.) Ford was not involved in Dakkota's decision to terminate its relationship with Ghezzi. (*Id.* at ¶ 22.) And Dakkota did not terminate its liaison relationship with Ghezzi at the direction or request of Wyatt. (*Id.* at ¶ 23.)

Inalfa terminated its business relationship with Ghezzi at the Plant in August 2010. (*Id.* at ¶ 29.) Ghezzi's supervisors at Inalfa, David Baxter and Rick Braun, testified at deposition that Ghezzi was technically deficient and Inalfa needed a customer liaison with greater technical expertise at the Plant. (*Id.* at ¶¶ 27-29.) According to Baxter and Braun, neither Ford nor Wyatt told Inalfa to terminate its business relationship at the Plant with Ghezzi. (*Id.* at ¶¶ 31-32.) But Ghezzi claims in her affidavit that Wyatt pressured Baxter and Braun to terminate Inalfa's relationship with Ghezzi because of Ghezzi's relationship with Rick Frank. (Ex. 1 to Dkt. No. 50, Pl.'s 56.1 Stmt. at ¶¶ 6-7.) Inalfa terminated Ghezzi no later than August 6, 2010. (Defs.'s Resp. to Pl.'s 56.1 Stmt. at ¶ 18.)

Rick Frank is Ghezzi's ex-husband. (*Id.* at ¶ 1.) Frank worked as a supplier representative at the Plant until 2010 when Ford no longer allowed Frank access to the Plant. (*Id.*) Frank filed a lawsuit against Ford alleging that Ford employees falsely accused Frank of improperly accessing Ford's computer programs. (*Id.* at ¶ 2.) Ghezzi claims that Wyatt told her that she needed to distance herself from Frank. (*Id.*)

Undercar terminated its business relationship with Ghezzi at the Plant in August 2010. (Pl.'s Resp. to Defs.'s 56.1 Stmt. at ¶ 56.) Ghezzi's supervisor at Undercar, Steven Keith, testified at deposition that Flueretta Drummer told him that Ghezzi could no longer access the Plant. (*Id.* at ¶ 54.) Keith understood that Ford would no longer allow Ghezzi to represent suppliers at the Plant because Ghezzi violated Ford's computer policy. (*Id.* at ¶¶ 48 and 54.) Undercar expected Ghezzi to follow Ford's rules and procedures when at the Plant. (*Id.* at ¶ 50.)

Because Keith understood that Ford would no longer allow Ghezzi to represent the Suppliers at the Plant, Undercar terminated its relationship with Ghezzi at the Plant. (*Id.* at ¶¶ 54-56.)

Ford's computer policy restricted computer use to legitimate business purposes and prohibited the transfer of user identifications and passwords from one individual to another. (*Id.* at ¶ 40.) Ghezzi accessed Ford's computer system at the Plant using the user identification and password of a Ford employee. (*Id. at* ¶ 46.) On August 9, 2010, Wyatt saw Ghezzi using Ford's computer system to search for vacations on Google. (*Id. at* ¶¶ 45-46.) Ford disciplined the employee who allowed Ghezzi to use his user identification and password to access Ford's computer system. (*Id. at* ¶ 49.) The Ford employee testified that he allowed other supplier representatives to use his credentials to access the internet. (Defs.'s Resp. to Pl.'s 56.1 Stmt. at ¶ 7.) There is a dispute as to whether Wyatt knew that the Ford employee allowed others to use his credentials to access Ford's computer system at the Plant. (*Id.* at ¶ 7.) There is also a dispute as to whether Wyatt saw Ghezzi access Ford's computer system prior to August 9, 2010. (*Id.* at ¶ 10.)

NYX terminated its business relationship with Ghezzi at the Plant in August 2010. (*Id.* at ¶ 63.) NYX expected Ghezzi to abide by Ford's policies, rules, and procedures while at the Plant. (*Id.* at ¶ 58.) NYX also expected Ghezzi to maintain good customer relations with Ford. (*Id. at* ¶ 59.) Ghezzi's supervisor at NYX, Gurpreet Sidhu, testified at deposition that Wyatt told him that she would not recommend that NYX continue to use Ghezzi as its customer liaison because Ghezzi violated Ford's computer policy. (Pl.'s Resp. to Defs.'s 56.1 Stmt. at ¶ 61.) Sidhu understood that Ford was not pleased with Ghezzi's violation of Ford's computer policy, which it considered unacceptable behavior. (Pl.'s Resp. to Defs.'s 56.1 Stmt. at ¶ 61.) Although satisfied with Ghezzi's services at the time, NYX terminated its business relationship at the Plant

with Ghezzi because "she is representing us, and if our customer is saying she's broken the law, how could we continue with somebody who broke their law." (Sidhu Dep. Tr. at 19:22-20:14, Ex. H to Dkt. No. 39, Defs.'s 56.1 Stmt.) Even though Ghezzi no longer works for NYX, NYX did offer her an opportunity to serve as its liaison at another facility. (Pl.'s Resp. to Defs.'s 56.1 Stmt. at ¶ 69.) Ghezzi declined the offer because it was in another state. (*Id.*)

## STANDARD OF REVIEW

"Summary judgment is proper when, viewing all facts and inferences in favor of the nonmoving party, no genuine dispute as to material fact exists, and the moving party is entitled to judgment as a matter of law." *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012). Whether a fact is material depends on the underlying substantive law that governs the dispute. *Id.* And a genuine dispute is one where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (citation omitted). Summary judgment is appropriate where the moving party shows that the nonmoving party cannot prove an element essential to its case. *Parent v. Home Depot U.S.A., Inc.*, 694 F.3d 919, 922 (7th Cir. 2012). Where the moving party has properly supported its motion, the nonmoving party must come forward with facts that show there is a genuine issue for trial. *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 951 (7th Cir. 2013).

## DISCUSSION

There are four elements to a claim for tortious interference with prospective economic advantage under Illinois law: (1) the plaintiff must have a reasonable expectation of a future business relationship; (2) the defendant must know of that expectation; (3) the defendant's purposeful interference must prevent the plaintiff's legitimate expectation from ripening; and (4) damages caused by the defendant's interference. *Ali v. Shaw*, 481 F.3d 942, 944 (2007). The

interference must be intentional and without justification when the defendant enjoys a privilege. *Delloma v. Consolidation Coal Co.*, 996 F.2d 168, 171 (7th Cir. 1993). A "[p]rivilege exists if the defendant acted in good faith to protect an interest or uphold a duty." *Id.*

> **A.  The Defendants' role in the business relationship between Ghezzi and the Suppliers does not preclude Ghezzi's tortious interference claim.**

The Defendants argue that they could not tortiously interfere with a contract to which they were a party. *See Nation v. American Capital, Ltd.*, 682 F.3d 648, 652 (7th Cir. 2012) ("It is settled law that a party cannot tortiously interfere with his own contract; the tortfeasor must be a third party to the contractual relationship."). According to the Defendants, they were a party to the contract between Ghezzi and the Suppliers because Ford was the source of the business opportunity and a necessary participant in the relationship between Ghezzi and the Suppliers.

To support their argument, the Defendants cite *W.D. Sales and Brokerage LLC v. Barnhill's Buffet of Tennessee, Inc.*, 362 Fed. Appx. 142 (11th Cir. 2010) (unpublished opinion). In *W.D. Sales*, the United States Court of Appeals for the Eleventh Circuit applied Florida law and concluded that a company did not tortiously interfere with a business relationship between suppliers and commission-earning brokers because it was a party to the business relationship. *Id.* at 143. In short, the company cut out the intermediary and decided to purchase directly from the suppliers. *Id.* Notably, the brokers did not dispute that the company was a party to the relationship between the brokers and the suppliers. *Id.*

Although the facts in *W.D. Sales* are similar to this case in certain respects, they differ drastically in one critical respect: Ghezzi has not conceded—and the Defendants have not shown—that the Defendants were a party to the business relationship between Ghezzi and the Suppliers. There is no dispute that Ford was critical to Ghezzi's relationship with the Suppliers.

Ford controlled access to the Plant where Ghezzi worked as an on-site customer liaison for automotive parts Ford purchased from the suppliers. Yet Ford's handling of Ghezzi's computer violation shows that Ford was not a party to the business relationship between Ghezzi and the Suppliers. (*See* Pl.'s Resp. to Defs.'s 56.1 Stmt. at ¶ 55.) As Flueretta Drummer explained, "With [Ghezzi] not being an employee, we would have to communicate to her respective employer of that violation." (*Id.*) Ford's inability to do anything more than notify Ghezzi's employer of the violation or revoke Ghezzi's access to the Plant undermines the Defendants' suggestion that either Ford or Wyatt were a party to the business relationship between Ghezzi and the Suppliers. While true that Ghezzi could not serve as a customer liaison at the Plant without Ford's permission, Ford's role in the business relationship between Ghezzi and the Suppliers was nonetheless incidental. Wyatt's role, if any, was even more so. The Defendants' incidental relationship to Ghezzi's business relationship with the Suppliers does not preclude Ghezzi's tortious interference claim. Therefore, the Defendants may be liable if they interfered with the business relationship between Ghezzi and the Suppliers. *See Ali*, 481 F.3d at 945 (concluding that Illinois law allows a third party to be liable where it interferes with the relationship between an at-will employee and her employer).

**B.    Ghezzi cannot establish the third and fourth elements of her claim with respect to Dakkota, Inalfa, and NYX.**

As a threshold matter, this Court must determine whether Ghezzi must show malice to prove her tortious interference claim. A plaintiff must show malice where a defendant's interference is privileged. *Delloma*, 996 F.2d at 171. In this context, malice means intentionally and without justification. *Id.*

Privilege exists here because Ford has interests in maintaining its relationships with its suppliers and in enforcing its policies and procedures at the Plant. Rather than contest or concede Ford's privilege, Ghezzi simply assumes privilege for the sake of argument. (Dkt. No. 48 at 14.) Consequently, there is no genuine dispute of material fact as to whether privilege exists. As a result, Ghezzi must show that the Defendants' interference was intentional and without justification. *See Delloma*, 996 F.2d at 171.

1. **The Defendants' interference did not cause Dakkota to terminate its business relationship with Ghezzi at the Plant.**

Ghezzi has not put forth facts that create a genuine issue of material fact as to whether the Defendants' conduct caused Dakkota to terminate its business relationship at the Plant with Ghezzi. Dakkota terminated its relationship concerning the Plant with Ghezzi in February 2010 due to internal restructuring. The Defendants were not involved in Dakkota's decision. And Ghezzi cannot recall any facts or information that would support a claim to the contrary. (Pl.'s Resp. to Defs.'s 56.1 Stmt. at ¶ 24.) Consequently, Ghezzi cannot prove that the Defendants either intentionally and unjustifiably interfered with Ghezzi's business relationship with Dakkota or that Dakkota terminated the business relationship as a result. Therefore, this Court grants summary judgment for the Defendants with respect to Ghezzi's claim that the Defendants tortiously interfered with her business relationship with Dakkota.

2. **There is a genuine issue of material fact as to whether Inalfa terminated its business relationship with Ghezzi at the Plant because of Wyatt's interference.**

Ghezzi's affidavit and deposition testimony create genuine issues of material fact as to whether Wyatt told Ghezzi's supervisors at Inalfa to terminate Inalfa's business relationship with Ghezzi. This Court cannot disregard deposition testimony or affidavits simply because they are

self-serving. *Hill v. Tangherlini*, 724 F.3d 965, 967 (7th Cir. 2013). Ghezzi testified at deposition that Wyatt told Baxter and Braun to say that Ghezzi was not technical enough. (*See* Ex. C. to Defs.'s 56.1 Stmt. at 94:1-15.) According to Ghezzi, Wyatt had it in for Ghezzi because of Ghezzi's affiliation with Rick Frank. (*See* Ex. 1 to Pl.'s 56.1 Stmt. at ¶¶ 1-5.) Ghezzi claims that Baxter and Braun told her that Wyatt pressured them to release Ghezzi. (*Id.* at ¶ 6.) According to Baxter and Braun, neither Ford nor Wyatt told Inalfa to terminate its relationship with Ghezzi. (*Id.* at ¶¶ 31-32.) There remains genuine issues of material fact as to whether Wyatt told Baxter and Braun to release Ghezzi and what effect, if any, Wyatt had on Baxter and Braun's decision to terminate its business relationship at the Plant with Ghezzi. Therefore, this Court denies summary judgment with respect Ghezzi's tortious interference claim as it pertains to Inalfa.

### 3. The Defendants' interference with Undercar was justifiable and did not cause Undercar to terminate its business relationship with Ghezzi.

Telling a supplier that its customer liaison failed to follow policies and procedures is justifiable. Ghezzi concedes that it would have been acceptable if Ford excluded her from the Plant for violating plant rules. (Pl.'s Resp. to Defs.'s 56.1 Stmt. at ¶ 66.) Ghezzi also concedes that it would have been acceptable for Ford to tell the Suppliers about the rule violation if the Suppliers asked. (Pl.'s Resp. to Defs.'s 56.1 Stmt. at ¶ 67.) It makes no difference, however, whether the Suppliers inquired—Ford was within its rights to report any incidents that could affect its relationship with its suppliers or its enforcement of its policies and procedures at the Plant. As Ghezzi herself admits, it would have been reasonable for Ford to voice any dissatisfaction with her to the Suppliers so long as the complaints were valid and truthful. (*Id.* at 8.)

In this instance, Ford was dissatisfied with Ghezzi's violation of Ford's computer policy. Although Ghezzi argues that her violation does not justify the Defendants' conduct because Ford did not enforce its computer policy, that argument is unavailing. Ford's computer policy prohibited the use of someone else's credentials to access Ford's computer system. Ghezzi not only used someone else's credentials to access Ford's computer system but also used Ford's computer system for something other than a legitimate business purpose. Ford called Ghezzi on her violation and reported it to Undercar and NYX. Ford even disciplined the employee who shared his credentials with Ghezzi. Selective or not, Ford enforced a policy that Ghezzi agreed to abide by and that her employers expected her to follow.

When Ford reported Ghezzi's violation of its computer policy, Undercar reacted. Undercar terminated its business relationship concerning the Plant with Ghezzi because it understood that Ford would no longer allow Ghezzi to represent suppliers at the Plant. Ghezzi's supervisor at Undercar, Steven Keith, testified at deposition that Ford's human resources representative told him that Ghezzi could no longer access the Plant. He further testified that he told Ghezzi that she could not represent Undercar at the Plant if Ford did not allow her access. (Ex. I to Defs.'s 56.1 Stmt. at 29:17-31:21.)

Although Ghezzi contends that Wyatt influenced Undercar's decision by pulling Keith aside and telling him it would be in Undercar's best interest not to hire Ghezzi, the record is clear that Undercar did not terminate Ghezzi until after Ford reported Ghezzi's computer policy violation. Keith explained that though Wyatt's statements gave Undercar pause, Undercar waited until hearing Ford's position on Ghezzi's computer policy violation before making a final determination. (Keith Dep. Tr. at 45:11-46:3, Ex. 10 to Pl.'s 56.1 Stmt.) Undercar decided to terminate its business relationship at the Plant with Ghezzi because of Keith's conversation with

Flueretta Drummer concerning Ghezzi's computer violation. This conversation breaks the causal chain necessary to tie Undercar's termination of Ghezzi to what Wyatt told Keith. *See BCS Services, Inc. v. Heartwood 88, LLC*, 637 F.3d 750, 757 (2011) (explaining that an "intervening" or "superceding" cause can snap the "causal chain" that connects a wrongful act to the injury).[1]

Consequently, Ghezzi cannot prove that the Defendants unjustifiably interfered with Ghezzi's business relationship with Undercar or that Undercar terminated the business relationship as a result. Therefore, this Court grants summary judgment for the Defendants with respect to Ghezzi's claim that the Defendants tortiously interfered with her business relationship with Undercar.

### 4. The Defendants' interference with NYX was justifiable and did not cause NYX to terminate its business relationship with Ghezzi.

Ghezzi's position at the Plant depended on two things—Ford's continued business with the Suppliers and Ford granting Ghezzi access to the Plant. Maintaining a good relationship with Ford was part of Ghezzi's job. Once Ghezzi violated Ford's computer policy, NYX became concerned as to whether Ghezzi would jeopardize its business with Ford. It does not matter who at Ford reported Ghezzi's violation to NYX so long as the report was truthful. Here, Wyatt told Gurpreet Sidhu, Ghezzi's supervisor at NYX, about Ghezzi's violation of Ford's computer policy. Even though he had been satisfied with Ghezzi's services up to that point, Sidhu explained that he was reluctant to risk NYX's relationship with Ford by allowing someone who had violated Ford's computer policy to stay on as NYX's representative.

---

[1] In this regard, Ghezzi's claim based on her business relationship with Undercar differs from her claim based on her business relationship with Inalfa. Undercar terminated its business relationship with Ghezzi after it learned of Ghezzi's violation of Ford's computer policy. Inalfa terminated its business relationship with Ghezzi prior to Ghezzi's violation of Ford's computer policy. Thus, there was no intervening cause with respect to Inalfa.

Ghezzi has not come forward with any facts other than Wyatt's report of Ghezzi's computer policy violation to NYX as a reason that NYX terminated its business relationship with Ghezzi at the Plant. This report was justifiable for the reasons discussed above. Consequently, Ghezzi cannot prove that the Defendants unjustifiably interfered with Ghezzi's business relationship with NYX or that NYX terminated the business relationship as a result. Therefore, this Court grants summary judgment for the Defendants with respect to Ghezzi's claim that the Defendants tortiously interfered with her business relationship with NYX.

## CONCLUSION

For the reasons stated herein, this Court grants the Defendants' motion for summary judgment with respect to Ghezzi's claims of tortious interference with her business relationships with Dakkota, Undercar, and NYX but denies it with respect to Inalfa.

Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: December 30, 2013

12